**IN THE COURT OF APPEALS OF TENNESSEE**
**AT KNOXVILLE**

FILED

June 18, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

ANGELA MAE ARP,                    ) C/A NO. 03A01-9808-CV-00273
                                   )
    Plaintiff-Appellee,            ) POLK CIRCUIT
                                   )
v.                                 ) HON. LAWRENCE PUCKETT,
                                   ) JUDGE
RICHARD LEE ARP,                   )
                                   ) AFFIRMED AS MODIFIED
    Defendant-Appellant.           ) AND REMANDED


ROBERT S. THOMPSON, LOGAN, THOMPSON, MILLER, BILBO, THOMPSON & FISHER, P.C., Cleveland, for Plaintiff-Appellee.

B. PRINCE MILLER, JR., Cleveland, for Defendant-Appellant.


**O P I N I O N**


Franks, J.


In this divorce action, the husband was dissatisfied with the classification of property, the division of marital property, and the custody arrangement ordered by the Trial Judge, and has appealed numerous issues to this Court.

The parties were married on January 6, 1990, and two children were born to the marriage.

The trial of the divorce was heard on March 13, 1998, and the wife testified that when she was eighteen she met the husband and they immediately started dating. They dated for six years before marriage, and lived together for four of those years. During that time, the wife took care of the house and did cooking, and worked

at Goody's Family Clothing Store as assistant manager. She also helped the husband with his businesses, by cleaning Peoples Bank and picking up money or washing the bays at the car wash.

The Trial Court, in resolving the issues, noted that the marriage was an eight year marriage, and found both in good health and to have the ability and vocational skills necessary to maintain a business. The Court found that neither party contributed to the education, training or increased earning power of the other, but both parties worked in the businesses, contributing to one another's enhanced financial state. The Court found the husband to be the motivator behind the businesses, and further that the wife made significant contributions, both as a homemaker and business partner, toward acquisition, preservation and appreciation of marital and separate properties.

The husband presents eight issues for review, as follows:

1.    The Court erred in the determination of separate property. The evidence does not support the Court's finding that the parties had been in a partnership for six years prior to their marriage.

2.    The Court erred in its valuation and division of Professional Janitorial Supply Corporation.

3.    The Court erred in finding that there was a $108,000.00 cash asset which is a separate asset of the parties.

4.    The Court erred in failing to find that the tax liabilities for the real estate, commercial and business properties, is a liability that should have been addressed in the division of the assets and liabilities.

5.    The Court erred in assessing Mr. Arp with one-half of the elective orthodontic procedure that Mrs. Arp incurred immediately before trial and for credit card debt which she incurred after an order for Temporary Maintenance and Support.

6.    The Court erred in the division of the marital estate.

7.    Appellant respectfully submits to the Court of Appeals that the division of the property attempted by the trial court cannot be complied with because of the cross-collateralization agreement that the parties executed to the People's bank of Fannin County, Georgia.

8. The Court erred in placing the care, custody and control of the parties' two minor children with their mother, Angela Mae Arp.

Our standard of review in this case is *de novo* upon the record of the Trial Court, accompanied by a presumption of correctness of the Trial Court's findings, unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d).

First, the husband insists the Court erred in the determination of separate property.

At the time of the marriage, the husband owned an interest in several pieces of property. Under T.C.A. §36-4-121(2)(A), all of these properties would be considered separate property, because they were owned before marriage. The Court found some of these properties to be separate property, some to be both separate and marital property, and some to be marital property. Accordingly, the issue thus becomes whether the property owned before marriage became marital property due to transmutation, commingling, or increase in value due to substantial contribution by the spouse.

Two of the husband's several parcels consist of land in Turtletown, Tennessee. The Trial Court awarded part of this property to the husband as separate property, and the rest to the husband as marital property. At trial, the wife did not dispute that all of the Turtletown property was separate property, and the Trial Court was in error in dividing a portion of this property as part of the marital estate. Thus, the award as marital property to the husband of 11.92 acres in Turtletown, valued at $30,000.00, must be excluded from the marital estate and awarded to the husband as separate property.

The Campbell property consists of 2.2 acres of unimproved property which the husband purchased for $45,000.00 before the marriage. The Trial Court assigned a value to this property at the time of trial of $265,000.00, and awarded one-fifth of the property to the husband as separate property, and four-fifths of the

3

property to the husband as marital property. The evidence at trial revealed that the parties had done nothing to this property, but it had increased in value due to its location and extension of public utilities. Accordingly, there is no basis to classify this as marital property, since the wife made no contribution to the properties' increase in value. The increase in value was not due to any contributions by either the husband or wife, but was due to the location and the economy. This is similar to the situation in *Harrison v. Harrison*, 912 S.W.2d 124 (Tenn. 1995), where the husband's separate property increased substantially in value due to the construction of an interstate highway.

The Trial Court valued the Cherokee Hills house at $120,000.00, and awarded half of it to the husband as separate property, and half of it to the husband as marital property. The husband states in his brief that this was pre-owned property, but does not set forth any reason why the property was wrongly classified as partial marital property. The evidence does not preponderate against the Trial Court's finding that fifty percent of the value of this property is marital, because the parties did live in this house for a period of time, and wife made contributions to its increase in value as a homemaker, and as a partner in the business. This is both direct and indirect substantial contributions to the properties' increase in value. The evidence does not preponderate against the Trial Court's determination. T.R.A.P. Rule 13(d).

Husband was operating all of his car washes before marriage, being 68 Car Wash, Tri-State Car Wash, and Appalachian Car Wash. It appears that he only owned half of the 68 Car Wash at the time of the marriage, and he purchased his partner's interest after the marriage. The Trial Court treated these businesses as marital property.

In these pre-owned properties, the proceeds and debts have been intermingled with those of marital property, and the husband treated the property in

4

such as way as to evince a transmutation into marital property. The financial transactions involving these parties and these businesses are not clearly delineated, but the record indicates that the debts on the properties were consolidated with other properties in 1992, after the marriage, so that only one payment was made. The refinancing produced new debt which was used to renovate the Hillcrest Motel, which is undisputed marital property. Later, the husband used these properties as cross-collateral for the Ocoee Chevron, Car Wash, and Inn.

Wife did the bookkeeping for the car washes and other businesses. Husband testified that he is now doing all of the bookkeeping for the businesses, and that it is a difficult job which takes a great deal of time. Both husband and wife had access to all of the business accounts, and they took money out of these accounts whenever they needed it. Husband stated that while he and the wife were married, "everything we did was -- we was together, I mean, husband and wife. I mean, I never done anything without talking to her about it. But she did things without talking to me. But we never made any ventures in anything unless we talked about it and prayed about it."

The husband's actions establish a partnership type of arrangement between the husband and wife, in all of their business ventures. The proceeds and debts of these businesses were extensively intermingled with marital proceeds and debts, blurring any distinction between the properties. Accordingly, the evidence does not preponderate against the Trial Court's classification.

Next, husband argues that the Trial Court erred in its evaluation and division of the Professional Janitorial Supply Corporation. We conclude the Court did not err in its evaluation and division of the Corporation, though it erred in ordering the release of a CD securing the debts of the Corporation. The value assigned by the Trial Court to the respective interest in the Corporation is supported by the evidence. In

this distribution the Trial Court ordered:

> Husband shall have sixty days to secure the release of the Certificate of Deposit and the proceeds from the sale of the jeep . . . or shall pay Angela Mae Arp the sum of $11,432.60.

We find no error in the award of the Certificate of Deposit to the wife, but the Court did err in ordering that the CD be released. Since the wife is responsible for one-half of the debt attributable to a one-third stock interest in the Corporation, this CD which secured the debt and was awarded to the wife, should remain as security for this debt. We accordingly vacate that portion of the Trial Court's Order that directs that the CD be released.

Next, it is asserted that the Court erred in finding there was $108,000.00 cash assets, which was a separate asset of the parties. We agree that the Trial Court's finding was in error. On October 1, 1997, the date of the deposition of the loan officer of People's Bank of Fannin County, Georgia, it was established that the husband had on that day a total of $108,173.26 in his personal and business accounts with the bank. The husband testified the account reflected the operating revenues of the business, and that on any given date they varied dramatically, depending on income and expenses. On the date of trial, February 13, 1998, the accounts had a balance of $68,645.64. The Trial Court properly distributed these accounts as marital property, but erred in the evaluation. Marital property must be "valued as of a date as near as reasonably possible to the final divorce hearing date." T.C.A.§ 36-4-121(b)(1)(A). The value on the date of the divorce hearing should have been the value utilized by the Court, and that amount must be substituted in the Court's judgment for "cash on hand".

Next, it is argued that the Court erred in failing to find that the tax liabilities for the real estate commercial and business properties is a liability that should have been addressed in the division of the assets and liabilities. The evidence established the amount of business tax liabilities in the State of Georgia, and business

6

taxes in the State of Tennessee. Apparently, these assessments were introduced at trial, but are not in the record before us. Accordingly, we cannot determine what tax amount is attributable to each of the parties.

"Marital debt should be allocated as are marital assets, and should be considered when making an equitable division of property." *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. App. 1996). In this case, the tax debt was incurred by virtue of property ownership, and while both parties might argue that taxes are not beneficial, both parties did benefit from the property ownership. The parties were awarded substantial assets in the property division, though the husband was awarded the greater share. Since the husband was awarded most of the marital property, he should be responsible for most of the tax attributable to that property. Accordingly, we hold that the equitable way to distribute the tax liability is to require each party to pay the debt on the property which he or she received in the distribution, which we cannot determine without the tax assessments. Accordingly, upon remand, the Trial Court is directed to determine the allocation of tax liability to each party.

Next, husband seeks relief from an assessment of one-half of an elective orthodontic procedure that the wife incurred immediately before trial, and for credit card debt she incurred after the Order of Temporary Maintenance and Support.

The Trial Court found the debt for the orthodontic procedure to be a marital debt, which, with the exception of the debts on the real property, the Court assessed the marital debts almost equally between the parties.

On April 25, 1997, the Trial Court entered an Order granting wife temporary custody of the two children, and ordering the husband to pay $200.00 per week as temporary child support, as well as providing that husband "further maintain payment on the other bills and indebtedness including, but not limited to, the home and utilities." After this time, the wife had orthodontic surgery on her jaw, and she

7

testified the surgery was for health reasons. The husband and wife had discussed the wife having the surgery five years earlier, but had put it off due to the wife's pregnancy, and their lack of insurance coverage.

The wife also incurred credit card debts after the Order went into effect. She testified that part of the debt was due to transfers of earlier debts to cards with lower interest rates, and part was due to new purchases. She testified she needed the cards because husband was no longer providing her with any money, other than the stated child support.

Husband argues that since the wife created this debt, she should pay for it. However, debt, like property, is considered marital if acquired during the marriage. *See Herrera*, p.389; *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. App. 1989). The evidence does not preponderate against the Trial Court's division of the indebtedness.

Next, the husband insists the Court erred in the overall division of the marital estate. As we have noted, the Trial Court made incorrect classifications of separate property and the marital property, and adopted an incorrect value of cash on hand and failed to include the tax assessment as liabilities. However, after considering the Trial Court's findings and the factors for equitable distribution set out in T.C.A. §36-4-121(c), the division made by the Trial Court, after our modifications, remains a fair and equitable division of the marital estate. As trial courts are given wide discretion in the division of marital property, their division is entitled to great weight on appeal, and we affirm the property division, as modified. *See Watters v. Watters*, 959 S.W.2d 585, 590 (Tenn. App. 1997).

The husband argues that the division of the marital property ordered by the Trial Court cannot be effected because of the cross-collaterization agreement that the parties executed at the People's Bank of Fannin County, Georgia. While the

8

cross-collaterization agreement complicates the property division, it does not render the division inoperable.

The People's Bank of Fannin County, Georgia, loaned the husband 100% of the construction costs of the Ocoee Convenience Store, Car Wash, and Motel project. The project was built and had been operating for about a year at the time of trial. The remaining loan balance on the project was $1,550,000.00, at the time of trial, and the Ocoee property was valued at $1,750,000.00. The Ocoee property is collateral for the loan, but so is all the other real property owned by either the husband or husband and wife together. In the distribution, the Trial Court awarded the wife property that is collateral for the Ocoee project.

The President of the Bank testified that the husband's total obligation to the Bank under this cross-collateral agreement and under prior loans is approximately $2,400,000.00. The husband's past business successes and his personal involvement in the venture, were the factors in the Bank's decision to loan the husband this amount of money for the Ocoee project, according to the Bank's president. The president stated the Bank would not release any of the collateral that secures the loan, and further that he would consider a transfer from the husband to the wife as a sufficient transfer to trigger a due on sale clause, though the transfer of a residence, as opposed to commercial property, generally would not trigger such action. He testified that the Bank could waive the due on sale clause, but he would have to analyze the situation at the time of the Court's transfer of property as to whether or not there was sufficient collateral to cover the loan.

Any possible ramifications that may flow from the property division cannot be a basis for denying the wife her equitable share in the marital estate. These contractual relationships do not prevent the Court from awarding interest in properties in a divorce case, and the transfer of the properties to the wife does not impair the

9

Bank's collateral interest. However, as the Trial Court ordered, the husband will be required to hold the wife harmless for any possible losses as a result of the husband's indebtedness to the Bank.

Finally, we conclude that the Court properly placed the minor children with their mother, which was in the Trial Judge's discretion. *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). The evidence preponderates strongly in favor of placement of the children with the mother, as being in their best interest.

In sum, the Trial Court's distribution of property will be modified, as indicated. Also, a tax liability will be assessed to each party upon remand, depending upon the tax liability attributable to the property that each party was awarded, and the order of the Trial Court to release the CD from the sale of the Nissan truck, as security to the loan for Professional Janitorial Service, will be vacated.

The judgment of the Trial Court is affirmed, as modified, and the costs assessed one-half to each party on appeal.


_____
Herschel P. Franks, J.


CONCUR:



_____
Houston M. Goddard, P.J.



_____
H. David Cate, Sp.J.